CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) Case No. 5:04CR30045<br>) Case No. 5:08CV80023<br>) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| LANCE O. PORTER, | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

This case is before the court for consideration of the Report and Recommendation submitted by the United States Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1). Defendant Lance O. Porter is a federal prisoner, confined under convictions of possession of marijuana with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. He challenges his confinement under 28 U.S.C.A. § 2255, alleging ineffective assistance of counsel during trial and appellate proceedings. The Magistrate Judge's Report recommends denial of Porter's § 2255 motion in its entirety. Upon review of the record, the court concludes that Porter is not entitled to relief under § 2255.

## Background

Police in Winchester, Virginia were dispatched to Porter's residence on April 7, 2002, after receiving a report that the home security alarm had been activated at the rear door of the residence. When no one answered the officers' knock at the front door, they investigated further and found that the rear door was closed, but unlocked. Neighbors told the officers that a child had opened the door by mistake and likely triggered the alarm. Police entered the residence without a warrant, did a sweep through the house for criminal activity or persons needing assistance, and observed a quantity

of marijuana and cash. They then secured the house, obtained a search warrant, and seized the drugs and related items, cash, and a pistol. Porter was arrested and charged in state court.

State charges against Porter were nol prossed, however, after a pretrial ruling in the Circuit Court for the City of Winchester suppressing the evidence obtained pursuant to the April 7, 2002 search of Porter's residence. Porter was later indicted in this court on federal drug and firearm charges. Porter's court-appointed counsel, Paul H. Thomson, moved to suppress the evidence seized during the April 7, 2002 search, arguing that the officers' initial warrantless entry into the residence was unreasonable. On August 15, 2003, the late Honorable James H. Michael, Jr., then Senior United States District Judge, conducted a hearing on Porter's motion, and the parties filed briefs. Judge Michael issued a published opinion and order on October 24, 2003, finding that special circumstances justified the warrantless entry and denying Porter's motion to suppress. United States v. Porter, 288 F. Supp. 2d 716, 718-19 (W. D. Va. 2003). After the trial was continued, Thomson withdrew as Porter's counsel, and new counsel, Gary Lance Smith, was appointed on March 25, 2004. Smith moved to dismiss the indictment on violations of the Speedy Trial Act, and on July 1, 2004, Judge Michael granted the motion and dismissed the indictment without prejudice.

A second federal indictment issued on June 23, 2004, charging Porter with the same offenses: possession with intent to distribute marijuana, in violation of 18 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The record does not reflect that the suppression issue was raised in any way during this second criminal case. During the two-day jury trial before Judge Michael in November 2004, Porter admitted that he had obtained the marijuana from a friend, but kept it in his house after deciding that it was not good enough to sell. He testified that he purchased and used the gun found in the residence only for target

and sport shooting. The jury found Porter guilty on both counts, and the undersigned sentenced him to 78 months imprisonment. On appeal, Porter challenged only the firearm conviction. The United States Court of Appeals for the Fourth Circuit affirmed his conviction. See United States v. Porter, 206 Fed. App'x 260 (4th Cir. Nov. 17, 2006) (unpublished).

In his § 2255 motion, Porter raised four claims of ineffective assistance: (a) counsel failed to appeal Judge Michael's use of an Allen charge to the jury; (b) counsel failed to preserve and appeal the claim that evidence obtained pursuant to an unlawful warrantless search should have been suppressed;[1] (c) counsel failed to honor Porter's request to petition for a writ of certiorari to the Supreme Court of the United States; and (d) counsel failed to argue effectively the lack of evidence relating the firearm to the marijuana. The court denied the government's motion to dismiss on June 19, 2008, and referred the case to the magistrate judge for conduct of an evidentiary hearing on claim (c) regarding counsel's failure to file a petition for a writ of certiorari. The court appointed habeas counsel for Porter, who subsequently moved to withdraw claim (c). The magistrate judge granted this motion, and the undersigned then considered the remaining claims. By order entered November 21, 2008, the undersigned again referred the case to Magistrate Judge Urbanski to address factual questions regarding claim (b).

Magistrate Judge Urbanski conducted an evidentiary hearing on February 10, 2008, which included testimony by Porter and former counsel Lance Smith. The magistrate judge issued his report on March 9, 2009, recommending that Porter's § 2255 motion be denied as to all claims. Specifically, the magistrate judge recommended that claim (b) be denied because Porter has not

---

[1] Porter's § 2255 motion alleged ineffective assistance on appeal related to this claim. However, Judge Urbanski allowed Porter to amend his § 2255 motion to expand claim (b) so as to allege that counsel during the second criminal proceeding was ineffective in failing to preserve and appeal the suppression issue.

- 3 -

demonstrated a "reasonable probability that the Fourth Circuit would have reversed Judge Michael's published opinion on appeal," as required to show prejudice under the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).[2] Porter filed a timely objection to the Report and Recommendation. Porter agrees that the Report and Recommendation "accurately summarizes the procedural history of the case and the evidence presented at the hearing on February 10, 2009." (Id. at 1). He also does not object to the Report's recommendation that claims (a) and (d) be denied. Rather, the objection argues only that the magistrate judge's conclusion on claim (b) is contrary to law. (Def. Obj. at 2).

## Discussion

As an initial matter, in the absence of objections from the parties, the court will adopt the Report and Recommendation as to claims (a) and (d). For the reasons stated by the magistrate judge, the court will deny relief as to these claims.

The issue remaining before the court is whether Smith provided ineffective assistance of counsel as defined under Strickland in failing to raise the suppression issue at trial and on appeal. 466 U.S. at 687. To prove that counsel's representation was so defective as to require that the conviction be vacated, a defendant must satisfy both prongs of a two-part standard by demonstrating that counsel's defective performance resulted in prejudice. Id. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Second, to show

---

[2] In light of his finding that Porter has not demonstrated prejudice, the magistrate judge found it "unnecessary to issue a recommendation on Strickland's performance prong," but noted that "Porter's counsel could identify no disadvantage Porter would have faced by preserving and pursing an appeal on the suppression issue." (Rep. & Rec. 23 n.7).

- 4 -

prejudice, the defendant must demonstrate a "reasonable probability" that, but for counsel's errors, the outcome would have been different. Id. at 694-95. If it is clear that the defendant has not satisfied one prong of the Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

In reviewing a § 2255 claim, the court must give deference to counsel's reasonable strategic decisions, and the defendant must, in fact, overcome a presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 688-89; Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (finding that courts are reluctant to second guess counsel's strategic choices). "[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. See also Knowles v. Mirzayance, __U.S.__, __S. Ct.__, No. 07-1315, 2009 WL 746274, *9-10 (March 24, 2009) (finding that counsel was not ineffective in recommending withdrawal of insanity defense where counsel reasonably concluded that defense had no reasonable probability of success, because the same jury had just rejected testimony about defendant's mental condition and key witnesses refused to testify; rejecting defendant's argument that counsel should have raised the defense only because defendant had nothing to lose by doing so). "The law does not require counsel to raise every available nonfrivolous defense." Knowles, 2009 WL 746274 at *10.

Counsel also has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant "if counsel, as a matter of professional judgment, decides not to present those points" Jones v. Barnes, 463 U.S. 745, 751 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52. Ineffective assistance for

- 5 -

Case 5:04-cr-30045-GEC Document 108 Filed 03/26/09 Page 5 of 10 Pageid#: 706

failing to appeal a given issue must be determined under the Strickland standard of defective performance and prejudice. Murray v. Carrier, 477 U.S. 478, 488 (1986).

Porter argues that Smith's decision to forego raising the suppression issue is not entitled to deference, because Smith did not investigate the facts or the law sufficiently before deciding not to pursue the suppression issue. (Def. Obj. 11-13). Porter notes that the state court granted a suppression motion on the same facts and that Smith did not order a transcript of the hearing on the suppression motion in the first federal case so as to review these facts. Porter argues that Smith was unaware that the Winchester Police Department had a practice of entering the building in which a security alarm had been activated and sweeping through all parts of it to be sure that a crime was not occurring and that no one needed assistance. Porter contends that based on these facts, Smith could have challenged Judge Michael's finding of exigent circumstances by arguing that instead of considering the totality of the circumstances as required, (1) the officers "completely disregarded the reasonable explanation of why the alarm had gone off, and (2) they had their minds made up before they arrived" that they would search the residence if the owner was not there. (Id. at 11).

The court cannot agree that Smith's decision on the suppression issue is not entitled to deference. On the contrary, the attorney's undisputed testimony at the evidentiary hearing supports a finding that his informed and conscious decision to forego a suppression motion at trial was a reasonable trial strategy under the circumstances. (Rep. & Rec. 8-12). Smith testified that just after his appointment, he met three or four times with Porter and former counsel Thomson to review with them the evidence related to the suppression issue, particularly the state court judge's decision to

suppress the evidence.[3] Smith also reviewed Judge Michael's opinion and other case law, as well as a box of documents related to Porter's case. Thomson conveyed to Smith his view that "the federal case law was moving towards allowing this evidence in," and the two attorneys both concluded that there was no strong argument for suppression.[4] (Id. 9). Smith did not believe it necessary to obtain the suppression hearing transcript because of his in-depth discussions with Thomson, who handled the hearings in state and federal court. Smith testified to the effect that he simply did not believe that Judge Michael would change his ruling on suppression and he made a conscious decision to abandon that issue.

Smith's trial strategy was to prove that Porter did not possess the gun in furtherance of any drug trafficking offense so as to defeat that element of the § 924(c) charge. Smith showed Porter a draft of the appeal brief and had two conference calls with Porter regarding the appeal, and he shared with Porter his belief that insufficiency of the evidence on the gun charge was the best argument on appeal. In retrospect, Smith testified, it might have been better to preserve and appeal the suppression issue in order to avoid the ineffective assistance claim that he is now defending. Smith agreed that he cannot identify any disadvantage that Porter faced in pursuing such a strategy. However, Smith testified that he believed the best course was to concentrate his efforts on defending the gun charge as the most likely strategy to achieve success in reducing Porter's criminal liability.

As stated, Porter argues that Smith should have investigated and discovered the police department policy of entering any home where a home security alarm had been activated and should

---

[3] Smith testified that Thomson withdrew from Porter's case only because he thought he might be called as a fact witness.

[4] Porter testified that Smith told him during an early meeting that the suppression motion was not a "winnable" issue. (Rep. & Rec. 7).

- 7 -

Case 5:04-cr-30045-GEC   Document 108   Filed 03/26/09   Page 7 of 10   Pageid#: 708

have argued that the officers relied on the policy to ignore evidence at the scene that mitigated against a need to enter the residence to check for a crime in progress or someone needing help. Yet, Porter himself states that the officers would have been able to show probable cause in order to obtain a warrant and admits that "the motives of the officers, or their standard operating procedure, would be irrelevant if there existed facts that objectively supported a reasonable belief of exigent circumstances." (Def. Obj. 6, 12). Judge Michael found the existence of an exception to the warrant requirement, as set forth in a decision from the United States Court of Appeals for the Fourth Circuit. See Porter, 288 F. Supp. 2d at 719-20 (citing United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992) (finding that for the emergency exception to the warrant requirement to apply, the officer making warrantless entry must have an objectively reasonable belief that "an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within"). Contrary to Porter's assertions in his objection, Judge Michael did not base his finding that the warrantless entry was justified under Moss merely on the activation of the alarm nor did he rely to great extent on cases outside the Fourth Circuit. Instead, the judge cited specific facts and doctrines in reaching his decision, including the unlocked rear door (when the rear door had activated the alarm); the lack of response to the officers' knocks and calls at the residence; deference to officers' on-the-spot judgments about the neighbors' innocent explanations for the alarm; and the expectations of the community that police officers should act to ensure the safety of citizens' property and persons above all. Id. at 721-22. Based on Judge Michael's thorough analysis of the suppression question and Smith's own review of the issue with Thomson, Smith reasonably could have believed that the judge would summarily deny a suppression motion and that Judge Michael's findings would be upheld on appeal. Thus, his affirmative decision not to pursue this course of defense is precisely the

- 8 -

type of strategic decision to which a habeas reviewing court must defer. Strickland, 466 U.S. at 690; Jones, 463 U.S. at 751.

The court also agrees with the magistrate judge that the defendant's claim fails under the prejudice prong of Strickland. As set forth in Judge Urbanski's Report, there is no reasonable probability that Porter would have won on the suppression issue on appeal. Judge Michael's application of the Fourth Circuit's Moss standard for the emergency exception to the facts in Porter's case was sound, as reflected by the fact that the Porter opinion has not been criticized by other courts.[5] The court agrees that a review of cases involving activated home security alarms establishes that Judge Michael's ruling was consistent with applicable case law. See, e.g., United States v. McCullough, 457 F.3d 1150 (10th Cir. 2006) (finding that officers' warrantless entry into residence was lawful under exigent circumstances doctrine despite verbal assurances from woman at the scene that activation of alarm had been accidental); United States v. Brown, 449 F.3d 741, 749 (6th Cir. 2006) (finding that triggering of alarm twice in short period, absence of owner, sounding of alarm, and open basement door presented exigent circumstance sufficient to justify warrantless entry).

---

[5] Porter argues that Judge Michael blurred the distinctions between the types of exceptions to the warrant requirement, blending the elements of three separate doctrines: the exigent circumstances doctrine, the emergency doctrine, and the community caretaker doctrine. There may be some merit to the argument that Judge Michael used the term "exigent circumstances" in a case where another of these doctrines could have been applied. However, the Moss decision itself indicates that the emergency doctrine allows for "immediate entry [ ] incident to the service and protective functions of the police, as opposed to, *or as a complement to*, their law enforcement functions." 963 F.2d at 678. In some circumstances, then, the doctrines themselves blur together, as police may reasonably believe that circumstances present an emergency justifying immediate entry both to stop a possible crime and to assist a possible crime victim. In any event, the court believes that Judge Michael cited sufficient evidence to support his finding under the emergency doctrine that police were justified in entering Porter's residence without a warrant. Thus, Smith reasonably could have concluded that pursuing the suppression issue further in Porter's case would yield no fruit. Moreover, Smith's strategic decision did not prejudice Porter because, as discussed at length in the Report and Recommendation, there was no reasonable probability that Judge Michael's finding of an exception to the warrant requirement would have been reversed on appeal, regardless of the arguably imprecise use of terminology.

Accordingly, the court adopts the Report and Recommendation and concludes that Porter's claims of ineffective assistance related to the suppression issue fail under both prongs of the Strickland analysis. Thus, Porter is not entitled to relief under § 2255 and his motion must be denied. An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to counsel of record.

ENTER: This 26th day of March, 2009.

/s/ Glen E. Conrad
United States District Judge